**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLLE C. LANG, | ) | |
| | ) | |
| Plaintiff- Appellant, | ) | No. 25 C 6797 |
| | ) | Bankr. Adversary Case No. 23-155 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| EDMOND G. CHENET, JR., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**OPINION AND ORDER**

This appeal arises out of Defendant-Appellee Edmond G. Chenet, Jr.'s Chapter 7 bankruptcy petition. Plaintiff-Appellant Nicolle C. Lang filed an adversary complaint in the bankruptcy court objecting to the discharge of a debt Chenet owed her, contending that he violated 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A) by concealing and making false oaths related to his assets, income, and financial accounts. The bankruptcy court held an evidentiary trial on May 5, 2025 and issued an oral ruling on May 6, 2025. The court denied Lang's objection to the discharge of Chenet's debt, finding that Lang had not proven by a preponderance of the evidence that Chenet acted with fraudulent intent or that any omissions were material to the estate. Lang has now filed an appeal of that decision. Because the bankruptcy court did not commit clear error in its finding that Lang had not sufficiently shown Chenet acted with fraudulent intent, the Court affirms the bankruptcy court's order.

**BACKGROUND**

Sometime prior to 2010, Lang made a loan to Chenet, which he did not repay. Lang went to state court and obtained a judgment against Chenet in 2010 totaling $329,866.51, comprised of $260,000 in damages and $69,866.51 in attorneys' fees and costs. Lang revived the judgment

on January 6, 2017, and recorded the judgment in the Cook County Clerk's Office on July 20, 2012 and re-recorded it on March 11, 2022. Chenet made no payments on the outstanding judgment. Lang issued several third-party citations to discover assets in August 2022. Chenet indicated he did not receive these citations, but he acknowledged learning of them after his bank froze certain accounts in response.

Chenet and his ex-wife entered into a marital settlement agreement (the "MSA") in 2018, in which he agreed to maintenance and child support obligations. The MSA also divided their marital properties, with Chenet agreeing to execute a quit claim deed conveying all his rights, title, and interest in property in (1) Elgin, Illinois; (2) Lake Placid, Florida; (3) St. Cloud, Florida; and (4) Miami, Florida to his ex-wife. The MSA indicated Chenet would retain property he owned in Haiti, which the MSA valued at $5,000.

On December 21, 2022, Chenet filed a Chapter 7 voluntary bankruptcy petition. He signed his petition, schedules, and statement of financial affairs ("SOFA") under penalty of perjury, representing that the information contained therein was true and correct. He disclosed Lang as one of his creditors, indicating she held an unsecured $329,866.51 claim. He also listed his ex-wife as having a priority unsecured claim in the amount of $27,938.12 arising from his domestic support obligations and his girlfriend, Nadie Bayonne, as having a $20,000 nonpriority unsecured claim for a loan made on October 1, 2022. Finally, he listed a $13,268 unsecured debt to One Main Financial.

In Schedule A/B, he indicated that he owned property in Haiti, which he valued at $1, noting that the 2010 earthquake had destroyed the property. In Section 17 of Schedule A/B, Chenet indicated he had three bank accounts: (1) a Chase checking account ending in 5956 with a $157.43 balance; (2) a PNC checking account ending in 5757 with a $1,350 balance; and (3) a

2

Wells Fargo checking account ended in 3919 with a $25.34 balance. He also disclosed a 100% interest in CBC Cellular Backup Contact LLC ("CBC"), but he valued that interest at $0. In Schedule I, Chenet did not disclose any contributions to his expenses from "an unmarried partner, members of [his] household, [his] dependents, [his] roommates, and other friends or relatives." Doc. 4-3 at 262. In his SOFA, he disclosed his wages from 2020 and 2021 but did not include any wages for the time that he worked in 2022. He did list the unemployment compensation he had received that year, however. He disclosed transferring a car to his ex-wife pursuant to the MSA, but he did not disclose having transferred any property to his ex-wife in the two years before filing for bankruptcy.

During the meeting of creditors pursuant to 11 U.S.C. § 341 (the "341 Meeting") on January 17, 2023, Lang's counsel questioned Chenet about his assets and finances. Chenet testified that, except for the Haiti property, he had transferred all other properties listed in the MSA to his ex-wife pursuant to the MSA. He indicated that he had bank accounts at Chase Bank, PNC Bank, and Wells Fargo, and primarily used the Wells Fargo account for his day-to-day affairs. On May 26, 2023, Chenet filed Amended Schedules A/B, listing two additional properties: (1) vacant land in Saint Cloud, Florida, valued at $10,000, with Chenet listed as the sole owner; and (2) a single-family home in Elgin, Illinois, valued at $268,000, with Chenet listed as a joint owner with a 50% interest valued at $134,000.

On June 12, 2023, Lang filed an adversary complaint objecting to Chenet's discharge under § 727(a)(2)(A) and (a)(4)(A). Chenet answered and asserted good faith, equitable estoppel, reasonable reliance, and mistake as affirmative defenses. Chenet contended that he promptly executed quit claim deeds for the properties as required in the MSA and had proceeded in the good faith belief that he had transferred possession of these properties to his ex-wife, not

3

realizing that his ex-wife had not recorded the quit claim deeds. In discovery, Chenet provided an affidavit that he had not paid any property expenses or taken any deductions, depreciations, or derived any income from the properties in Elgin, Miami, Lake Placid, or St. Cloud since entry of the MSA in July 2018. He also produced a 2021 quit claim deed for the Elgin property, but he claimed that he had also sent his ex-wife another version of the quit claim deed in 2018. Chenet also represented that he never owned property in Miami.

It also came out in discovery that CBC had a PNC checking account ending in 0075 (the "CBC account") since 2022. From January 1, 2022 to the date Chenet filed his bankruptcy petition, Chenet received $76,731.79 in this account, including $41,109.30 in the six months prior to filing. From January 1, 2022 to the date of his bankruptcy filing, Chenet received $90,400.24 in deposits in his Wells Fargo account, including $48,483.93 in the six months before his bankruptcy filing. Despite having identified no wages for 2022 in his bankruptcy schedules, his 2022 tax return listed $56,788 in wages.

The bankruptcy court held a trial on May 5, 2025, at which Lang and Chenet testified. Chenet testified that CBC did not do any business and admitted that he used the CBC account for personal purposes, not as a business account. He represented that the money he received in the CBC and Wells Fargo accounts came mainly from his girlfriend and other family members. He used that money not only for his general living expenses but also to take care of his girlfriend's business and help her family members. Chenet testified that he did not list the deposits he received in the CBC and Wells Fargo accounts on his bankruptcy schedules because he did not consider them income. *See* Doc. 5 at 96:9–18 ("[S]ome of the money [his girlfriend] give it to [him] as a gift, she [was] taking care of [him] because [he] wasn't working."); *id.* at 115:12–23 ("That's not my income. The money that people send to me to do their own business, to take

4

care of . . . I'm not getting anything."); *id.* at 122:3–8 ("It's not an income for me. That's something that people – it's not income for me."); *id.* at 151:4–12 ("You might interpret it as an income, but we as a family would not put it in income, because that's something within us."). Chenet also testified that he did not disclose his 2022 income in his bankruptcy schedules because he did not have his W-2 at the time and so could not calculate his wages because he had not received a steady amount every week during his employment. Chenet further indicated that he did not actually have an interest in the Miami property at the time he entered into the MSA, and he understood that his ex-wife had consented to its removal from the MSA's terms. He also stated that he believed that upon signing the MSA, he no longer owned or had any interest in the Elgin and other properties listed therein. Chenet denied omitting any interest in property to hide it from his creditors, stating that he would never do that because he was "a responsible person." Doc. 5 at 150:9–21; *see also id.* at 186:10–187:7 (indicating he "never" intended to hide his ownership and instead did not believe he owned any of the properties). He also represented that he had not completed the legal process in Haiti for ownership of the property and so could not sell it. He further noted that given the state of affairs in Haiti after the hurricane, he considered the land to have no value.

After hearing testimony and considering the evidence and the parties' arguments, on May 6, 2025, the bankruptcy court orally found that Chenet was entitled to a discharge. With respect to § 727(a)(2)(A) and the properties, the bankruptcy court found that the properties at issue did not count as property of the estate at any relevant time period because the MSA required Chenet to transfer the properties to his ex-wife. As for Chenet's 2022 salary and the deposits from his family and friends into the CBC and Wells Fargo accounts, the bankruptcy court credited Chenet's testimony that his failure to disclose his 2022 income amounted to a mistake, noting

that no evidence controverted this testimony. The bankruptcy court found it "unclear whether the deposits [to the CBC and Wells Fargo accounts] were income that should have been listed in question five of the SOFA." Doc. 5-1 at 223:6–12. Regardless, the court found that it did "not have adequate evidence to conclude by a preponderance of the evidence that the income and other transfers were property of the estate, concealed from disclosure with the intent to hinder, delay or defraud a creditor" for purposes of § 727(a)(2)(A). *Id.* at 224:11–24. With respect to § 727(a)(4)(A), the court found that while Chenet technically had an interest in the properties at the time he filed his bankruptcy case because his ex-wife had not recorded the quit claim deeds, Lang "provided no evidence establishing that [Chenet] knew he had any ownership interest in the properties at the time he filed his bankruptcy case" and "failed to establish that [Chenet's] failure to list the properties was done with fraudulent intent and that the failure related materially to the bankruptcy case," particularly given that the testimony "clearly established that the properties were not property of the estate" and the Haiti property "had no value to the estate." *Id.* at 227:12–23. As for Chenet's 2022 income, the court again found his testimony that he made a mistake "credible and uncontroverted." *Id.* at 228:19–21. It further found it did "not have enough evidence to conclude by a preponderance of the evidence that by failing to list the 2022 income and deposits from friends and family, the debtor did so with fraudulent intent and that the alleged false statements related materially to the bankruptcy case." *Id.* at 230:5–10. The bankruptcy court therefore denied Lang's requested relief and dismissed the adversary proceeding.

Lang then filed a motion for reconsideration, which the bankruptcy court denied. Lang then filed this appeal.

**LEGAL STANDARD**

On appeal, this Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently." *In re Lifschultz Fast Freight*, 132 F.3d 339, 343 (7th Cir. 1997) (citation omitted) (internal quotation marks omitted). But "[a] factual finding is clearly erroneous if 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017) (quoting *Kovacs*, 614 F.3d at 672).

**ANALYSIS**

The discharge exception under § 727(a)(2) "essentially consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)), *aff'd on other grounds sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2004). To establish the discharge exception found in § 727(a)(4), Lang had to show that (1) Chenet made a statement under oath, (2) the statement was material to the bankruptcy case, (3) the statement was false, (4) Chenet knew the statement was false, and (5) Chenet made the statement with an intent to deceive. *Lardas v. Grcic*, 847 F.3d 561, 569 (7th Cir. 2017). Lang needed to establish these grounds for discharge by a preponderance of the evidence. *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011).

The bankruptcy court found that Lang did not show by a preponderance of the evidence that Chenet acted with fraudulent intent or that the alleged false statements had a material impact

7

on the bankruptcy case. Lang contends that the bankruptcy court committed clear error because it required a finding of actual intent to defraud and discounted the cumulative effect of Chenet's omissions, which Lang contends amounted to at least a reckless disregard for the truth, which the Seventh Circuit recognizes as equivalent to fraudulent intent. She claims that the omission of Chenet's 2022 wages and concealment of the deposits into the CBC and Wells Fargo accounts related directly to Chenet's financial condition and had a material effect on his bankruptcy because their disclosure would have disqualified him from Chapter 7 eligibility.[1] Lang also contends that Chenet's late disclosure of the interests in the Florida and Elgin properties, combined with his statements that he had made complete and accurate disclosures initially, further served as circumstantial evidence of fraudulent intent and concealment.

A creditor can establish fraudulent intent by showing that the debtor knowingly intended to defraud or engaged in behavior demonstrating a reckless disregard for the truth. *In re Kempff*, 847 F.3d at 449; *Stamat*, 635 F.3d at 982. It "must be actual and cannot be constructive," although it can "be established by circumstantial evidence." *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). Fraudulent intent is a factual question left for the bankruptcy judge, with the judge considering the debtor's "whole pattern of conduct." *In re Ratner*, 132 B.R. 728, 731 (Bankr. N.D. Ill. 1991) (quoting *In re Reed*, 700 F.2d 986, 991 (5th Cir. 1983)); *see also In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) ("The bankruptcy court's finding of

---

[1] Lang also appears to contend that the bankruptcy court committed error in finding that the deposits to his CBC and Wells Fargo accounts did not constitute income under the Bankruptcy Code that Chenet had to disclose. As Lang points out, § 101 defines "current monthly income" to include "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(B)(i). The bankruptcy court indicated that "it was unclear whether the deposits were income that should have been listed" in the SOFA, noting that Chenet testified that he used at least some of the deposits to pay for his girlfriend's and her relatives' expenses. Doc. 5-1 at 222:22–223:12. Even while noting this uncertainty, the bankruptcy court nonetheless considered whether Chenet acted with fraudulent intent in concealing these deposits. Therefore, any error in the bankruptcy court's equivocal statement about whether Chenet should have treated the deposits as income was harmless.

fraudulent intent may be based on inferences drawn from a course of conduct. Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances." (citations omitted)); *Chlad v. Chapman*, No. 17 C 5198, 2018 WL 4144627, at *9 (N.D. Ill. Aug. 30, 2018) ("[A] pattern or series of false statements may be used to establish a reckless disregard for the truth.").

Although Lang clearly believes that the bankruptcy court incorrectly decided the facts, this Court's review of the bankruptcy court's factual findings is deferential: "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently." *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted). Having reviewed the record, the Court finds the bankruptcy court's factual findings plausible, particularly given the fact that the bankruptcy court had the opportunity to judge the credibility of the witnesses. *Id.* at 734 ("[I]t is for the bankruptcy court to assess the credibility of witnesses and weigh evidence, and we will not second guess the court's resolution of conflicting evidence."). While the bankruptcy court could have provided more specific and detailed factual findings on the issue of fraudulent intent, Lang has not provided this Court with any caselaw requiring more detailed findings. The bankruptcy court indicated that it had reviewed all the evidence and arguments that the parties had made to reach its conclusions, ultimately finding Lang did not carry her burden and that Chenet had provided persuasive explanations for the omissions. While courts may be "reluctant to accept a debtor's own self-serving statement of his intent as the best evidence," *In re Costello*, 299 B.R. 882, 895 (Bankr. N.D. Ill. 2003) (citation omitted) (internal quotation marks omitted), and the Court itself may have reached a different conclusion if serving as the initial factfinder, upon review of the

9

entire record, the Court cannot find that the bankruptcy court committed clear error in this case, *see Freeland*, 540 F.3d at 733 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (citation omitted)); *In re Marcus-Rehtmeyer*, 784 F.3d 430, 435–437 (7th Cir. 2015) (although the district and appellate courts "might view with skepticism" the debtor's explanations, because "the bankruptcy court heard all of the testimony and was in the best position to assess [the debtor's] credibility, and it certainly was not outside the realm of reason" to find for the debtor, the "district court was correct to defer to the bankruptcy court's determination of credibility and factual findings"); *In re Yonikus*, 974 F.2d at 903 (under the clear error standard, the court may reverse factual findings "only if, upon the entire record, [it] reach[es] 'the definite and firm conviction that a mistake has been committed'" (quoting *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992))). Because the bankruptcy court did not commit clear error with respect to its findings related to fraudulent intent, the Court must affirm the bankruptcy court's denial of Lang's objection to the discharge of Chenet's debt.[2]

## CONCLUSION

For the foregoing reasons, the Court denies Lang's appeal and affirms the bankruptcy court's judgment.

Dated: March 24, 2026

SARA L. ELLIS
United States District Judge

---

[2] In light of the fact that the Court finds no basis to reverse the bankruptcy court's finding on fraudulent intent, the Court need not address Lang's contention that the bankruptcy court should have found that Chenet's statements were material to the bankruptcy for purposes of the § 727(a)(4) claim.